UNITED STATES, Appellee

v.

Patrick J. MALIA, Specialist Four, U. S. Army, Appellant.

No. 33,159.

CM 434174.

U. S. Court of Military Appeals.

Nov. 27, 1978.

For Appellant—*Colonel Alton H. Harvey; Major Richard J. Goddard; Captain R. Stuart Broom* (on brief); *Captain Larry D. Anderson* (on brief).

For Appellee—*Colonel Thomas H. Davis; Major John T. Sherwood, Jr.* (on brief); *Major Steven M. Werner ; Captain Lee D. Schinasi* (on brief); *Captain John F. DuPue.*

Opinion of the Court

FLETCHER, Chief Judge:

Appellant stands convicted, contrary to his pleas, of aggravated assault, obstructing justice, and communicating a threat, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934, respectively.

Four days after appellant's brigade commander ordered him into confinement, the military magistrate examined the propriety of this action. He immediately determined that there was a dispute over whether the appellant had threatened the alleged victim to deter him from testifying as a witness at another trial. Therefore, the magistrate decided to keep the question of release of the appellant under advisement until there was testimony taken at an Article 32, 10 U.S.C. § 832 hearing. After being incorrectly informed by the Article 32 officer that no evidence was adduced concerning the threat, the magistrate released the appellant from confinement on August 26, 1975. One day later the brigade commander overrode the magistrate's order of release and ordered the appellant back into confinement.

On September 2, 1975, the Magistrate, the Brigade Commander, the Staff Judge Advocate and others met together in the Brigade Commander's office to discuss the question of the pretrial confinement of the

appellant. At the conclusion of this meeting, the magistrate chose to leave the appellant in pretrial confinement. This was communicated to the appellant that day.

The granted issue of whether the accused's pretrial confinement, after his release by the magistrate, was illegal is too general an inquiry and, we believe, is more clearly answered by examining three questions:

1. Can a commander overrule the decision of a magistrate?
2. May a magistrate reconsider his earlier decision?
3. What are the due process prerequisites to a hearing before a magistrate?

■ The first question must be answered in the negative, as we agree with the holding of the Army Court of Military Review that the Brigade Commander, "Colonel Nichols lacked authority to issue the reconfinement order of 27 August and . . . appellant was unlawfully imprisoned on that date." The footnote to this conclusion stated:

Trial testimony to the effect that this action was "discussed with the Judge Advocate General's office [sic]," does not alter this result. The Staff Judge Advocate had no power to vary the terms of the regulation as to the Magistrate Program.

While the Court of Military Review limited its discussion to Army Regulations and local supplements thereto, we believe that a further rationale for their decision can be found in the Uniform Code of Military Justice itself and the decisions of this Court.

■ A magistrate, as required under the concepts set forth in *Courtney v. Williams*, 1 M.J. 267 (C.M.A.1976), must be neutral and detached. The cases which preceded *Courtney* directed necessary pretrial confinement hearings to be conducted by a judge.[1] A magistrate by definition is a judge. Colonel Nichols was a military com-

---

1. *Milanes-Canamero v. Richardson*, 23 U.S.C. M.A. 710, 50 C.M.R. 916 (1975); *Phillippy v. McLucas*, 23 U.S.C.M.A. 709, 50 C.M.R. 915 (1975); *Porter v. Richardson*, 23 U.S.C.M.A. 704, 50 C.M.R. 910 (1975).

mander who, according to the Court of Military Review," was primarily concerned with the threat to other persons." Therefore, he was disqualified to act as a magistrate within the plain meaning and spirit of the above decision.

Moreover, this Court in *United States v. Ware*, 1 M.J. 282 (C.M.A.1976), decided that under Article 62(a), UCMJ, 10 U.S.C. § 862(a), a commander could not reverse the finding of a trial judge but could only return the record to the court for reconsideration of the ruling. Similar reasoning applies to preserve the viability of the magistrate's ruling on pretrial confinement.

■ As to the second question, we generally approve the A.B.A. Standards, Pretrial Release § 5.9 (1968):

(a) The release decision should be automatically re-examined by the releasing court within a reasonable time in the case of a defendant who has failed to secure his release.

(b) A defendant, whether or not in custody, should be able, on application, to obtain prompt review of the release decision.

(c) Frequent and periodic reports should be made to the court of general jurisdiction as to each defendant who has failed to secure his release within [two weeks] of arrest. The prosecuting attorney should be required to advise the court of the status of the case and why defendant has not been released or tried.

Applying these standards to the military justice system, and in view of the public policy[2] analyzed in *United States v. Ware*,[3] *supra*, we believe the magistrate's release decision was reviewable either on his own motion, upon application of the defendant, or upon request of command.

The third question is not subject to an easy answer. There is little guidance provided in the Uniform Code of Military Justice[4] or by the Manual for Courts-Martial, United States, 1969 (Revised edition).[5]

■ The first hearing by a magistrate after confinement should be prompt, that is, without unnecessary delay.[6] We must look to the Supreme Court for a statement as to the nature of the hearing required. In *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975), the Supreme Court stated:

These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.

Even understanding the additional question before a military magistrate of the propriety of confinement,[7] we hold that the initial consideration of pretrial confinement must be immediate and does not necessitate an adversary proceeding. This conclusion, however, does not reach the ultimate question presented here. Subsequent to the initial hearing wherein the appellant was released, an ex parte discussion was held, at which newly discovered information was presented and the decision by the magistrate to confine prior to trial was ordered. These ex parte communications were subsequent to the Article 32 hearing where the appellant was represented by an attorney.

---

2. Article 62(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a).

3. *Cf. Salley v. United States*, 134 U.S.App.D.C. 90, 413 F.2d 364, 365 (1968); *Bail Reform Act*, 18 U.S.C. §§ 3143, 3146(d).

4. Articles 10 and 13, UCMJ, 10 U.S.C. §§ 810 and 813.

5. Paragraph 20(c), Manual for Courts-Martial, United States, 1969 (Revised edition).

6. *See* ABA Standards, Pretrial Release § 4.1 (1968).

7. *Courtney v. Williams*, 1 M.J. 267, 271 (C.M.A. 1976).

■ At the initial hearing, "[b]ecause of its limited function and nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel."[8] Nevertheless, minimum standards of fairness in the military justice system dictate that after counsel has been appointed to represent the accused, any consideration that can change the status of the accused necessarily be characterized as adversary.[9] Moreover, an ex parte communication on behalf of the command should not be tolerated by a magistrate in making "a fair and reliable determination" without the presence of the accused or his attorney if so represented at that time.[10] That attorney should be notified and given the opportunity to be present and rebut any statement concerning his client.

We hold that consideration by the magistrate, through ex parte communication, of newly discovered evidence without an opportunity for the accused or his counsel to respond is error.

■ Furthermore, we must examine the prejudicial effect on a conviction of improper consideration of matters relating to pretrial confinement. We do not believe consideration of such matters prejudicially affects conviction. The Supreme Court resolved this question in *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); and *Gerstein v. Pugh, supra,* 420 U.S. at 119, 95 S.Ct. 854, 865. In the latter case the Court commented that it is "the established rule that illegal arrest or detention does not void a subsequent conviction." *Id.* However, such matters may affect the sentence. Under our unique system the Courts of Military Review may correct prejudicial error as to sentence. The proper remedy for the error in this case is an administrative credit of a period equal to that of the improper confinement.[11] In the interests of judicial economy, we will provide that relief.

The decision of the United States Army Court of Military Review is affirmed in all respects except that the appellant will be credited with time served from August 27 to October 7, 1975.

Judge PERRY concurs.

COOK, Judge (dissenting):

Since the Supreme Court's determination, in *Gerstein v. Pugh,*[1] that the Constitution requires "a neutral magistrate" to confirm that probable cause exists to confine a person arrested for alleged commission of a crime, a majority of this Court has evinced a disposition to deny the military commander eligibility to act as the magistrate. I have elsewhere recorded the reasons that led me to conclude that the endeavor to achieve that purpose by decree of this Court is contrary to the Uniform Code of Military Justice and the Manual for Courts-Martial.[2] Suffice it to iterate that, contrary to the majority's insistence that "a magistrate by definition is a judge," the magistrate contemplated by the Supreme Court for the probable cause proceeding need not be a judge, and to repeat my conviction that the military commander is not inherently disqualified to act as a neutral and detached magistrate charged with assuring the constitutional right of an accused delineated in *Gerstein. See Wallis v. O'Kier,* 491 F.2d

---

8. *Gerstein v. Pugh,* 420 U.S. 103, 122, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975).

9. *See United States v. McOmber,* 1 M.J. 380 (C.M.A.1976); *United States v. Johnson,* 20 U.S.C.M.A. 320, 43 C.M.R. 160 (1971); *United States v. Flack,* 20 U.S.C.M.A. 201, 43 C.M.R. 41 (1970) (Ferguson, J., dissenting); *United States v. Estep,* 19 U.S.C.M.A. 201, 41 C.M.R. 201 (1970); paragraph 44*h*, Manual, *supra.*

10. *Gerstein v. Pugh, supra,* 420 U.S. at 125, 95 S.Ct. 854.

11. *United States v. Larner,* 1 M.J. 371 (C.M.A. 1976).

1. 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

2. *Porter v. Richardson,* 23 U.S.C.M.A. 704, 50 C.M.R. 910 (1975); *Phillippy v. McLucas,* 23 U.S.C.M.A. 709, 50 C.M.R. 915 (1975).

1323 (10th Cir. 1974), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); *United States v. Head,* 416 F.Supp. 840 (D.C.N.Y.1976).[3]

Turning to the specifics of this case, it can be decided, as the Court of Military Review held, only on the basis of the regulations. The court held, and I agree, that the accused's confinement on August 11 was "quite lawful." Under the Uniform Code and the Manual, only the military commander can release a confinee from properly imposed confinement.[4] The military magistrate provided for in the confinement release program, under which Captain Cheatham purported to act, derives his authority solely by command empowerment. Consequently, the majority's analogy to *United States v. Ware,* 1 M.J. 282 (C.M.A. 1976), is inappropriate. *Ware* held that, under the language of Article 62(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a) the convening authority could not overturn a trial judge's ruling dismissing a charge on a ground not amounting to a finding of not guilty, but could only return the case to the judge with a request for reconsideration. Although Captain Cheatham is a member of Army JAG, that status alone does not constitute him a military judge within the meaning of Article 26, UCMJ, 10 U.S.C. § 826. *See also* Article 6, UCMJ, 10 U.S.C. § 806. His authority to rule definitely cannot, therefore, be likened to the authority of a trial judge under

Article 62(a), unless his power to act is like that of a trial judge. What his authority is, must, therefore, be determined by examination of the regulations that have created the office and prescribed its powers. Similarly, if, under the regulations, the magistrate is not, in fact, a military judge, he cannot claim the independent power to release that the Court has ascribed to a trial judge in the cases cited in note 1 of the majority's opinion.

Army Regulation 27–10, chapter 16, c. 15 (September 9, 1974), creates the office of military magistrate and defines the magistrate's authority. The regulation directs that the "magistrate will presume that, . . . the charges and specifications . . . are based upon substantial evidence." Para. 16–4a. To me, the plain meaning of this provision is that the magistrate cannot inquire into the probable cause of accused's confinement. Thus, we are not dealing with a *Gerstein* situation. What then does this "magistrate" do? The regulation says he will determine whether "*continued* pretrial confinement . . . meet[s] legal requirements (see para. 20 to 22, inclusive, MCM, 1969 (Rev.))." Para. 16–3 (emphasis supplied). Considering the content of the referenced Manual paragraphs and that the declared purpose of the regulation is "to monitor pretrial confinement" (para. 16–1), the inescapable conclusion is that the magistrate's responsibility is to effectuate the Manual precept that

---

**3.** I am constrained to note that the majority's quotation of part of a reference by the Court of Military Review to Colonel Nichols as being "primarily concerned with the threat to other persons" is grossly misleading in its implication that the Court of Military Review had determined that the Colonel was disqualified to act as a magistrate in the proceedings in issue. The fact is the Court of Military Review specifically held that the accused's initial confinement on August 11, at Colonel Nichols' direction, was "quite lawful." Responding to accused's contention that the Colonel had confined him for a "wrong reason," the court said [2 M.J. 963, 965 (A.C.M.R.1976)]:

It is clear from the record that Colonel Nichols was primarily concerned with the threat to other persons which would flow from not restraining appellant. However, we find that he was also aware of the other legal predi-

cates for pretrial confinement. His emphasis on the threat only reflects the differences among reasonable men; it does not create legal error, particularly where the emphasis is on a reason which is itself sufficient to justify restraint. *Nixon, supra* [21 U.S.C. M.A. 480, 45 C.M.R. 254 (1972)]. Consequently, we hold that appellant's initial incarceration was for proper purposes and lawful. Not a single circumstance in the opinion of the Court of Military Review, or in the record itself, justifies any implication that Colonel Nichols was either inherently, or by disposition or previous inconsistent conduct, disqualified from acting in the pretrial confinement proceedings. Nor does the record raise any question as to the legality of the decision to confine the accused.

**4.** See my dissent in *Porter v. Richardson, supra.*

"[c]onfinement will not be imposed pending trial unless deemed necessary to insure the presence of the accused at the trial or because of the seriousness of the offense charged." Manual, *supra,* para. 20*c.* This is the subject matter of a bail proceeding; and that is the issue here.

Quite recently, the majority confirmed that inquiry into whether an accused has been legally confined is different from inquiry into whether he should be continued in confinement, despite the existence of probable cause to believe that he has committed a crime. *United States v. Heard,* 3 M.J. 14, 17 (C.M.A.1977). The latter inquiry concerns the concept of bail. Although the right to bail, that is, release from confinement on some assurance that the accused will be present for trial, is a constitutional right, it is not available in the military. In the federal civilian courts, bail is considered in conjunction with the inquiry into probable cause. 18 U.S.C. §§ 3041, 3141 and 3146; Fed.R.Crim.P. 5(a) and (c) and 44; 1 Wright Federal Practice and Procedure §§ 78 and 81 (1969). However, AR 27–10 provides a contrary procedure. While it requires the military magistrate to interview the accused personally, it also directs that "[h]e will not hold a formal hearing in the matter," and it expressly forbids "adversary proceedings." AR 27–10, para. 16–4*b* and *f.* I am not at all certain that these requirements conform to the "'stepped' process" promulgated in *Heard* under which "lesser forms of restriction or conditions on release . . . [must be] tried and . . . found wanting" before continuation of confinement is allowable,[5] but as the incidents before us long preceded *Heard,* I am satisfied that under then prevailing law, the regulation was valid.[6] *Id.* at 21–22.

Under the regulation, the magistrate could make only one of two decisions. He could determine that "continued pretrial confinement" was "warranted," in which event he was to "record that fact," or he

could determine "the confinee should be released," in which event he would notify the unit commander and the prisoner would be "released within 48 hours." AR 27–10, para. 16–4*a* and *b.* The magistrate could not impose "conditions" upon the release, but he could "recommend appropriate restrictions." Para. 16–4*c.* With or without recommendation by the magistrate, the regulation continued the unit commander's right to "impose any reasonable pretrial restraint he deems necessary upon a prisoner released from confinement by a magistrate." Para. 16–4*d.*

The process of review for release was "automatic" and continuous. The regulation required that the first review be made "within 7 days after the confinee has entered pretrial confinement," but the Fort Carson regulation reduced the period to 5 days. AR 27–10, para. 16–4*a* ; Headquarters, Fort Carson, and 4th Infantry Division (Mechanized), Supp. 1 to AR 27–10 (6 Feb. 1975), para. 4b(1). Under both regulations, a subsequent review had to be made not less than every two weeks thereafter, until pre-trial confinement was terminated.

I have already noted that the Court of Military Review determined, and I agree, that the initial imposition of pretrial confinement was "quite lawful." As required by the regulations, Magistrate Cheatham reviewed various documents mentioned in the regulation and conducted a timely personal interview of the accused. Although he received "good vibs" from the accused and a co-accused, Specialist Johnson, he thought it necessary to check out their involvement in a reported threat of injury to a government witness. He concluded that continued confinement was warranted until completion of the Article 32 investigation. The investigation hearing was held on August 26. That day Magistrate Cheatham spoke to the investigating officer; he was informed, mistakenly, that no testimony had been presented at the hearing of the involvement in the threat of either the ac-

---

5. The process seems to me to require some kind of hearing, with the accused and his counsel present.

6. An earlier majority of the Court has given its imprimatur to the regulation. See *Courtney v. Williams,* 1 M.J. 267, 271 n.14 (C.M.A.1976); *United States v. Bielecki,* 21 U.S.C.M.A. 450, 45 C.M.R. 224 n.1 (1972).

cused or Johnson. As a result, he went the next day to the stockade and had "them let out."

On August 28, Colonel Nichols was apprised of the accused's release. He discussed the matter with his legal officer. Informed that the Article 32 investigating officer had reviewed the tapes of the hearing he had conducted and had found that testimony had, in fact, been presented to connect the accused and Johnson with the threat to a prospective government witness, he concluded the magistrate had not known "all the facts," and his lack of such knowledge constituted "new evidence" which warranted reconfinement. Accordingly, he ordered that the accused and Johnson be reconfined.

Magistrate Cheatham was also informed that testimony of the threat had been introduced at the Article 32 hearing. On September 2, he met with Colonel Nichols and others to discuss the matter. Although certain he would not have released the accused had he known the true facts, he believed that the reconfinement was improper because under his "SOP" (standard operating procedure), it appeared that a commander could reconfine only for "subsequent misconduct" or "additional facts discovered relating to the original offense,"[7] and neither of these conditions was present. However, on the basis of the "newly disclosed" information, he concluded that the accused and Johnson should continue in confinement. He went to the stockade and informed them of his decision and his reasons for it.

The Court of Military Review determined that Colonel Nichols had no authority to reconfine the accused under the magistrate regulations. I agree with that determination. Although the Army regulation authorizes a unit commander to impose physical

restraints upon a person released by the magistrate "he may not return the confinee to pretrial confinement but upon the commission of another offense or upon receipt of newly discovered information." AR 27–10, para. 16–4d. Colonel Nichols conceded that the accused had not committed another offense, but he regarded the report of the misinformation given to Magistrate Cheatham as "newly discovered information," within the meaning of the regulation. Whether that construction of the regulation is permissible is open to question, especially in view of the interpretation of the regulation expressed in the SOP used by the magistrate, but even if it comprehends the situation that confronted the Colonel, the Court of Military Review held, and I agree, that this exception was not available under the Fort Carson supplement. The supplement provides that no person released by the magistrate "may subsequently be reconfined unless he commits an additional offense or offenses after his release," and "no appeal" lies from the magistrate's release, either by the accused or the commander. Section 4, paras. e and f.

Neither the Army regulation nor the Fort Carson supplement specifically provides for the possibility that a decision to release might be predicated upon a mistake as to the existence of material facts, or upon a mistaken view of known facts. Nor does either regulation expressly provide for reconsideration of a decision to release. Nevertheless, the Court of Military Review determined that, as there is no general prohibition against reconsideration in law and no specific prohibition in the regulations, a magistrate could reconsider a decision to release, either on his own motion or on application.

Viewing the September 2 proceedings according to its "substance," the court con-

7. In material part, para. 3k of the Standard Operating Procedures, Fort Carson Military Magistrate Program, reads as follows:

Reconfined Prisoners. No prisoner who has been released from pretrial confinement upon an order of a military magistrate may be subsequently placed in pretrial confinement except for another offense or offenses that occur subsequent to the release, or based upon newly discovered facts relating

to the original offense. Circumstances of prisoners who are returned to pretrial confinement after release by the magistrate will be reviewed. Determination whether continued pretrial confinement is warranted will be made on the same basis for returned prisoners as that for any other prisoner, the fact that the prisoner has been previously released by the military magistrate notwithstanding.

cluded that Magistrate Cheatham had reconsidered his decision to release the accused, and his new determination established "a continuum of pretrial confinement from its initiation on 11 August." I agree with the ruling that the magistrate could, under the regulations, reconsider a decision to release, but I disagree with the court's conclusion that the accused suffered "no injury from the abortive action" of Colonel Nichols.[8] The fact is, the accused was entitled to remain out of confinement until the magistrate vacated his order to release. That action was not taken until September 2. Consequently, the accused was improperly in confinement for the period of August 28 to September 2.

Long ago, this Court held that improper pretrial confinement does not justify dismissal of the charges. On that ground alone the trial judge's denial of the defense motion to dismiss was correct. What is left is the possible effect of pretrial confinement on the sentence. In the civilian community, a defendant in pretrial confinement, whether it be legal or illegal, is entitled to day-for-day credit in the calculation of the period of confinement he is required to serve. Until *United States v. Larner*, 1 M.J. 371, 374 n. 11 (C.M.A.1976), that was not the practice in the military; as there was no statute or regulation requiring that the accused be given administrative credit for pretrial confinement, legal or illegal, the rule was to allow the fact of confinement to be taken into account in assessment of sentence. See *United States v. Jenkins*, 19 U.S.C.M.A. 478, 42 C.M.R. 80 (1970); *United States v. Jennings*, 19 U.S.C.M.A. 88, 41 C.M.R. 88 (1969); *United States v. Clark*, 17 U.S.C.M.A. 26, 37 C.M.R. 290 (1967).

In *Larner*, while conceding that under military law a "convicted accused . . . is not entitled by right to credit on his sentence for pretrial confinement," a majority of the Court distinguished between

legal confinement and illegal confinement. *Id.* at 374 n. 11. As to the latter, it held that instead of being taken into account in assessment of the sentence, the accused must be given administrative credit on a day-for-day basis. In *Heard*, the present majority indicated that the *Larner* rule was also applicable "at the trial level." 3 M.J. at 23.

I dissented in *Larner* and in material part in *Heard*. My reasons made it unnecessary to consider the correctness of the Court rule, but I perceive a number of flaws in it that impel me to comment now. First, an analogy to civilian cases, exemplified by *Lee v. United States*, 400 F.2d 185 (9th Cir. 1968), is inappropriate because the federal civilian courts are required by law to credit the defendant for pretrial confinement on a day-for-day basis; it is immaterial to the allowance of credit whether the confinement is legal or illegal. Secondly, my experience with military courts suggests that an accused is likely to benefit more from a procedure that allows the sentencing authority to take account of pretrial confinement, especially if it was illegal, either in imposition or in the conditions of confinement, than he is by an administrative credit for the exact number of days of his confinement. See *United States v. Drown*, 19 U.S. C.M.A. 562, 42 C.M.R. 164 (1970); *United States v. Nelson*, 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969).

As to the disposition of the case, in *Heard*, despite the existence of a "degree" of prejudice resulting from the failure to give the accused administrative credit for illegal pretrial confinement, the majority concluded that further judicial proceedings were unwarranted. Here, the adjudged period of confinement has fully expired, and there is no possibility whatever of residual prejudice from the small period of illegal confinement to which the accused had been subjected. I agree, therefore, that the decision of the Court of Military Review should be affirmed.

8. As a decision to confine is not a function of the magistrate, I believe the regulation's provision as to reconfinement is directed only to those who can impose confinement. It does not, therefore, in my opinion, foreclose recon-

sideration by a magistrate of a decision to release, which, as the Court of Military Review indicated, would be a reinstatement of the original confinement.