**UNITED STATES, Appellee,**

v.

**Private First Class Michael G. RICE, SSN 364–72–6482, United States Army, Appellant.**

CM 442855.

U.S. Army Court of Military Review.

20 July 1983.

Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, Captain James A. McAtamney, JAGC, and Captain Jesse W. Bendahan, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain Paul E. Jordan, JAGC, were on the pleadings for appellee.

Before HANSEN, CLARKE and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

BADAMI, Judge:

Consistent with his pleas, appellant was convicted of assault thereby intentionally inflicting grievous bodily harm, indecent assault, and assault with intent to commit rape, violations of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1976). The military judge, sitting as a general court-martial, sentenced appellant to a dishonorable discharge, confinement at hard labor for four years, total forfeitures, and reduction to Private E–1.

Prior to appellant's arraignment trial defense counsel questioned the military judge, Lieutenant Colonel Joe L. Woodward, regarding the judge's involvement with appellant's pretrial confinement. Appellant was placed in pretrial confinement on 1 April 1982. On 4 April 1982, defense counsel was appointed to represent appellant and formed an attorney-client relationship. On or about 8 April appellant was released from pretrial confinement by the military magistrate.

During voir dire Judge Woodward acknowledged that prior to the military magistrate's final decision on whether to release appellant or keep him in pretrial confinement, he, the military judge, called the military magistrate. The call was made at the behest of Lieutenant Colonel B., the Mannheim Deputy Staff Judge Advocate and Captain G., the Chief of Criminal Law. These officers were concerned that appellant might be released from pretrial confinement and that their prior experience made them "leary" in that another similarly charged accused had committed more crimes upon his release. Judge Woodward thought these officers were justly concerned "about the possible danger to other individuals" and made the call to the military magistrate.

When speaking to the military magistrate, Judge Woodward asked the magistrate to take into consideration all the possible consequences of a release and the "harm to other individuals that might occur when people who are charged with having

committed serious offenses involving harm to other people are left [sic] out." Judge Woodward then asked that the magistrate consider all the possible factors before making his decision. The magistrate was advised that the judge was not going to overrule his decision and that the decision to release the appellant from pretrial confinement would be his alone.

During voir dire Judge Woodward explained that he wanted to be sure that the military magistrate was doing the right thing and noted that while he had the authority to overrule a magistrate's decision, he did not choose to do so and only choose to intervene when there were some exceptional circumstances. Once the judge determined that the magistrate had given the matter all the consideration he thought it deserved, the judge was willing to abide by the magistrate's decision.

Appellant's trial defense counsel introduced a memorandum for record, dated 23 May 1982, in which the defense counsel detailed what he knew of the telephone call. Appellant also introduced two letters. The first, a letter from another defense counsel, expressed concern that the same military judge, by chastising court members after sentencing for "leniency" in another case, had disqualified the panel and created a chilling effect on future court members. The second, a letter from a civilian attorney who had unsuccessfully attempted to have the military judge recuse himself in a previous court-martial for his admonishing prior panels because they gave what the military judge thought was too lenient a sentence. The writer of the latter letter, a civilian attorney, observed the judge and the court president in a rather lengthy, closed-door session. The attorney opined that the admonishments of which he had heard and his personal observations led him to believe that there was a "chilling effect" on jurors.

Appellant challenged Judge Woodward for cause based on the telephone call to the magistrate and the allegations contained in the letters referred to above which he argued evinced "a pattern of certain pro-prosecution bent." Judge Woodward denied

any such "bent" and assured defense counsel that in all cases he was just as interested in seeing that a person gets a fair trial as counsel or anyone. The military judge acknowledged that he was concerned that in some cases people convicted of felonies did not get adequate sentences. The judge opined that his feelings were neither unethical nor illegal; that there was no entitlement to a liberal, lenient judge sitting on every case and that he would not recuse himself for "some baloney like" the appellant's grounds. The challenge was denied. Appellant was arraigned and he then pled guilty.

After the providence inquiry was completed and findings were entered, appellant was given the opportunity to decide whether he wished to be tried by judge alone or members. Appellant requested trial by a military judge alone. When asked whether he understood the earlier discussions regarding his defense counsel's feeling about the judge's impartiality and ethical misconduct, the appellant replied "yes sir." Judge Woodward then recessed the court to consider whether to accept the appellant's request. When the court was called to order, appellant again requested trial by military judge alone. Appellant acknowledged that he understood all the things discussed that morning and that the judge would make the sole determination as to what sentence would be adjudged. Judge Woodward stated that he was reluctant to approve the request, not because he had "any qualms about being able to adjudge a fair and impartial sentence ... but because he wanted to make absolutely sure that appellant, ... felt that he was getting an impartial determination as to the sentence and was not going to change his mind somewhere later down the line." Appellant understood this explanation and upon specific questions by the military judge, agreed that he had no qualms about his request for sentencing by the military judge.

 A ruling of a trial judge on a challenge for cause rests within the discretion of the trial judge and will not be disturbed on appeal unless there has been

an abuse of discretion. *United States v. Wright,* 47 C.M.R. 637 (A.F.C.M.R.1973). The burden of establishing the propriety and correctness of the challenge rests on the moving party. Paragraph 62*h,* Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev)); *United States v. Talbott,* 12 U.S.C.M.A. 446, 31 C.M.R. 32 (1961); *United States v. Russell,* 43 C.M.R. 807 (A.C.M.R.1971). While the facts in this case do not show an abuse of judicial discretion in denying the challenge for cause, they do cause us concern.

■ Appellant argues that once counsel has been appointed, any consideration that can change a pretrial confinee's status should be characterized as adversary. For this proposition he cites *United States v. Malia,* 6 M.J. 65 (C.M.A.1978). *Malia* has no application to this case. In *Malia* the accused had already been through an Article 32 investigation and had been released from pretrial confinement when the magistrate was approached ex parte with new information which ultimately caused the accused to be reconfined. Here, however, the magistrate had not made the initial determination of pretrial confinement, and there was no new information which the defense should have been given the opportunity to rebut. Paragraph 9–5b(9) of Department of the Army Regulation (AR) 27–10, Legal Services-Military Justice (1 September 1982) states that the magistrate will not hold a formal hearing nor will an "adversary proceeding" be conducted. Since this was the magistrate's initial determination and not an adversary proceeding, appellant was not entitled to be represented before the magistrate. *See Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ Still, we cannot approve of the military judge's action. We generally approve of ABA Standards for Criminal Justice, § 6–2.1 (Second ed. 1980):

6–2.1 Duty to prevent ex parte discussions of a pending case

The trial judge should insist that neither the prosecutor nor the defense counsel nor any other person discuss a pending case with the judge ex parte, except after adequate notice to all other parties and when authorized by law or in accordance with approved practice.

■ Although Judge Woodward had not then been detailed as trial judge in appellant's case he was aware that he was "normally" the judge in all general courts-martial tried in that jurisdiction. The military judge was therefore under a greater duty to proceed cautiously. He should avoid contacts which create the appearance of partiality. We are aware that military judges are responsible for supervising military magistrates under paragraph 9–4b, AR 27–10 (1 September 1982). However, these supervisory duties cannot take precedence over an accused's right to an impartial judge who will make findings of fact and determine an appropriate sentence based only upon the evidence presented at trial. Especially to be avoided are contacts with the command or office of the staff judge advocate where there is a special danger that even entirely innocent contacts will create the appearance of impropriety.

Our conclusion, however, does not reach the ultimate question: whether the military judge's failure to recuse himself was an abuse of discretion and prejudical error. *United States v. Bradley,* 7 M.J. 332 (C.M.A. 1979). Pointing to the ex parte communication and allegations of pro-prosecution "bent," appellant argues that the military judge formed a "positive and definite opinion as to the guilt or innocence of the accused . . . ," thereby creating a basis for challenging for cause under paragraph 62*f* (10), MCM 1969 (Rev).[1] Appellant further relies on subsection (13) of paragraph 62*f,* MCM 1969 (Rev), which admonishes that a military judge should recuse himself whenever there are "[a]ny other facts indicating that he should not act as . . . military judge in the interests of having the trial free from substantial doubt as to legality, fairness, and impartiality."

---

1. *See* ABA Standards for Criminal Justice § 6–1.7 (Second ed. 1980).

■ The allegations of a pro-prosecution "bent" are easily disposed of. Simply because a judge expresses predilections on an issue of the law or sentencing does not mean that he is disqualified to sit in judgment of such issues. *United States v. Bradley*, 7 M.J. at 334.[2] The test is whether the "military judge is mentally free to render an impartial finding and sentence based on the law and evidence." *United States v. Reed*, 2 M.J. 972, 977 (A.C.M.R.1976). We hold that he was.

■ A more difficult question is the issue of the military judge's call to the military magistrate. Our examination of the relationship between the military judge and the office of the staff judge advocate does not support appellant's conclusion that Judge Woodward must have formed an opinion as to the guilt or innocence of the accused. The statements of Captain G. and Lieutenant Colonel B. did not contain detailed knowledge concerning the offenses charged. Rather, the statements were general expressions of concern that the accused might represent a danger to the community because of the serious nature of the alleged offenses. After satisfying himself that the military magistrate carefully considered his decision, Judge Woodward did nothing to reverse that decision. Under these circumstances there is no indication that the military judge had prejudged appellant's guilt.[3] Even had the military judge been exposed to all the circumstances relating to pretrial confinement, i.e., served as magistrate, he would not have been disqualified. *United States v. Reeves*, 12 M.J. 763 (A.C.M.R. 1981); *United States v. Williamson*, 11 M.J. 542 (A.C.M.R.1981). Further, the military judge's disclaimer of bias and prejudgment should be given considerable weight. *United States v. Jarvis*, 22 U.S.C.M.A. 260, 46 C.M.R. 260 (1973). Finally, the appellant's selection of trial by military judge alone and his plea of guilty, in spite of his earlier challenge for cause, is some evidence that the appellant believed the military judge could fairly and impartially try his case. We conclude that the military judge's action, which should not be repeated nor emulated, does not require reversal.

■ The appellant assigns as a second error, that his plea to the assault by intentionally inflicting grievous bodily harm was improvident because the evidence failed to establish that the injury of the victim constituted grievous bodily harm. During the plea inquiry the military judge correctly defined grievous bodily harm. Appellant acknowledged that he understood the definition. Appellant admitted that he intended to seriously hurt the victim when he struck her in the face. He further admitted that he believed the injuries she suffered constituted grievous bodily harm and that the Government could prove both the injury and its status as grievous bodily harm. We find that the subdural hematoma and the immobilization of the jaw for several days (two weeks) is such that it constitutes grievous bodily harm in the context of this case.

Finding the asserted errors to be without merit, the findings of guilty and the sentence are therefore affirmed.

Chief Judge HANSEN concurs.

Senior Judge CLARKE did not participate in this decision.

---

2. A caveat is in order. The military judge must be careful that his comments are not made before a panel. *See United States v. Jones*, 15 M.J. 967 (A.C.M.R.1983); *compare United States v. Montgomery*, 16 M.J. 516 (A.C.M.R. 1983).

3. Socrates has said: "Four things belong to a judge; to hear courteously; to answer wisely; to consider soberly; and to decide impartially." Franklin Pierce Adams, Book of Quotations 466 (1957). Dante has put it much simpler, "O mortal men! be wary how ye judge." As quoted in the Handbook for Judges 2 (Winters ed. 1975).