**UNITED STATES, Appellant,**

v.

**Wesley M. REXROAT, Private First Class U.S. Army, Appellee.**

No. 93–5007.
CMR No. 9102033.

U.S. Court of Military Appeals.

Argued July 12, 1993.

Decided Sept. 29, 1993.

For the United States: *Major Joseph C. Swetnam* (argued); *Colonel Dayton M. Cramer* and *Lieutenant Colonel Joseph A. Russelburg* (on brief).

For the Accused: *Captain David L. Thomas* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel JAmes H. Weise, Major Fran W. Walterhouse* on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted Private First Class Rexroat, in accordance with his pleas, of 2 specifications of absence without leave; attempted larceny from a Navy Exchange; and 41 specifications of uttering worthless checks, in violation of Articles 86, 80, and 123a, Uniform Code of Military Justice, 10 USC §§ 886, 880, and 923a, respectively. The approved sentence provides for a bad-conduct discharge, confinement for 30 months, total forfeitures, and reduction to Private E1.

At trial, PFC Rexroat, appellee in this case, requested credit for 5 days of illegal pretrial confinement, arguing that a magistrate did not conduct a probable-cause review of his pretrial confinement within 48 hours as required by *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). The military judge denied the request. The Court of Military Review affirmed the findings and sentence but granted PFC Rexroat 5 days of credit for illegal pretrial confinement. 36 MJ 708, 715 (1992) (en banc).

The Judge Advocate General certified the following questions for our review:

I

DID THE ARMY COURT OF MILITARY REVIEW CORRECTLY CONCLUDE THAT THE PROVISIONS OF RCM 305(c) AND (d) OF THE 1984 MANUAL CANNOT MEET THE REQUIREMENTS OF *GERSTEIN [v. PUGH,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)] AND *[COUNTY OF] RIVERSIDE [v. MCLAUGHLIN,* 500 U.S. 44, 111 S.CT. 1661, 114 L.Ed.2d 49 (1991)]?

II

DID THE ARMY COURT OF MILITARY REVIEW CORRECTLY HOLD THAT THE REVIEW BY LTC [LIEUTENANT COLONEL] RANDALL COULD NOT MEET THE REQUIREMENTS OF *GERSTEIN* AND *RIVERSIDE?*

III

EVEN IF THIS COURT AGREES WITH THE ARMY COURT THAT RCM 305(i)

IS THE ONLY AUTHORIZED MEANS TO REVIEW A COMMANDER'S PRETRIAL CONFINEMENT ORDER, IS THE SEVEN DAY TIME LIMIT OF RCM 305(i) NONETHELESS REASONABLE IN THE MILITARY?

With respect to the first certified issue, we hold that the Court of Military Review was incorrect when they concluded that RCM 305(c) and (d), Manual for Courts-Martial, United States, 1984 (*see* Appendix), cannot meet the requirements of *Gerstein* and *McLaughlin.* We hold further that RCM 305(h) complies with *Gerstein* and *McLaughlin* when pretrial confinement is reviewed by a neutral and detached commander, if the review is accomplished within the time limits established by *McLaughlin.*

We answer the second certified issue in the negative. The record establishes that LTC Randall was neutral and detached. Although his review could not satisfy RCM 305(i) because he was not authorized by service regulations to conduct the RCM 305(i) review, his independent review of the probable-cause determination by the unit commander, Major Williams, was not prohibited by law or regulation; was conducted within the time limits established by *McLaughlin;* and was therefore sufficient to satisfy *Gerstein* and *McLaughlin.*

The third certified issue is resolved by our answer to the first certified issue. RCM 305(i) is not the only authorized means to review probable cause for pretrial confinement.

The pertinent facts are undisputed. PFC Rexroat was apprehended for shoplifting at the Pearl Harbor Navy Exchange on June 26, 1991. He was absent without leave at the time. He remained in custody until Major Williams ordered him into pretrial confinement on June 27 in accordance with RCM 305(d).

On June 28, LTC Randall, a unit commander not in PFC Rexroat's chain of command, was briefed on the facts of the case and determined that there was probable cause to keep PFC Rexroat in confinement. LTC Randall's authority to review PFC Rexroat's pretrial confinement was not contested at trial. LTC Randall had no knowledge of the case and was not otherwise involved in the prosecution of PFC Rexroat.

Major Williams reviewed PFC Rexroat's confinement in accordance with RCM 305(h) and memorialized his findings of probable cause and the need for continued confinement in a memorandum dated July 3, 1991. The timeliness of his RCM 305(h) review is not disputed. Also on July 3, Major Hudson, a judge advocate who had been appointed a military magistrate, conducted a hearing at which PFC Rexroat was represented by military counsel. Major Hudson determined that continued pretrial confinement was appropriate. On August 1, 1991, Major Steen, who apparently was Major Williams' successor in command, preferred charges against PFC Rexroat.

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that the Fourth Amendment requires a person arrested without a warrant to be given a prompt judicial determination of probable cause as a prerequisite to pretrial detention. This "prompt" judicial determination was to be made by a neutral and detached person independent of the police or prosecutor.

*County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), went one step further to define what is "prompt" under *Gerstein.* The Court set out a bright-line rule that probable-cause determinations made after 48 hours of arrest are presumptively untimely. The Court stated:

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.

500 U.S. at ——, 111 S.Ct. at 1670.

In *Courtney v. Williams,* 1 MJ 267 (CMA 1976), this Court, referring to *Ger-*

*stein,* held that "those procedures required by the Fourth Amendment in the civilian community must also be required in the military community," unless military necessity required a different rule. *Id.* at 270. The Court also held that, since bail does not exist in the military, "a neutral and detached magistrate must decide more than the probable cause question. A magistrate must decide if a person could be detained and if he should be detained." *Id.* at 271 (footnotes omitted).

Article 9(d), UCMJ, 10 USC § 809(d), provides: "No person may be ordered into arrest or confinement except for probable cause." In order to comport with the requirements of *Gerstein* and *Courtney,* the President promulgated RCM 305, which implements Article 9(d) and contains specific procedures for pretrial-confinement review. RCM 305(c) and (d) provide that a commissioned officer may order confinement only upon probable cause. RCM 305(h) requires a commander to determine within 72 hours whether pretrial confinement will continue. RCM 305(i) provides for review by "a neutral and detached officer" within 7 days of "the adequacy of probable cause to believe the prisoner has committed an offense and of the necessity for continued pretrial confinement." Lastly, RCM 305(j) provides for review of "the propriety of pretrial confinement" by a military judge "[o]nce the charges ... are referred to trial."

The *Gerstein* requirement for an initial probable-cause determination is addressed in Article 9(d) and RCM 305(d). The required prompt review of probable cause is addressed in RCM 305(h) and (i). The concern expressed in *Courtney v. Williams,* 1 MJ at 271, for a "bail hearing" substitute is addressed in RCM 305(i). Lastly, RCM 305(j) provides the judicial review by a military judge which was lacking at the time *Courtney* was decided.

Transposing *Gerstein* and *McLaughlin* to military practice requires some discussion of terminology. *Gerstein* and *McLaughlin* both involved arrest by civilian police and pretrial detention in a jail house. PFC Rexroat was apprehended and held in custody until his commander could be notified and could determine whether to place him in pretrial confinement. Both "apprehension" and "custody" are terms of art in military law. *See* RCM 302(a)(1) ("Apprehension is the taking of a person into custody."). "Custody" may include physical restraint, albeit temporary. *See United States v. Ellsey,* 16 USCMA 455, 458–59, 37 CMR 75, 78–79 (1966). "All commissioned, warrant, petty, and noncommissioned officers" may take a person into custody pursuant to RCM 302(b)(2); but only a commissioned officer may order an enlisted person into pretrial restraint and only a commanding officer may order a civilian or officer into pretrial restraint. RCM 304(b). Pretrial confinement is a form of pretrial restraint. RCM 304(a)(4). Thus, when Major Williams ordered PFC Rexroat into pretrial confinement, he was actually continuing the physical restraint of PFC Rexroat in the Navy brig. However, upon execution of Major Williams' order, PFC Rexroat's condition legally changed from "custody" to "pretrial confinement."

▪ The first question we must decide is whether the 48–hour time limit established in *McLaughlin* applies to the military services. The Judge Advocate General of the Army assumed that it did and issued guidance for implementing it. *See* 36 MJ at 712–13 n. 5. We agree that the 48–hour time limit imposed by *McLaughlin* applies to the military services.

The purpose of RCM 305 was to comply with *Gerstein* and *Courtney* and their progeny. *See* Drafters' Analysis of RCM 305, Manual, *supra* at A21–14.2 (Change 3). *McLaughlin* refined *Gerstein* by defining the outer limits of a "prompt" review of pretrial detention. Applying the *Courtney* mandate, "[w]e discern no consideration of military necessity that would require a different rule." 1 MJ at 270.

It is important to note that *McLaughlin* merely sets up a presumption of untimely review when the 48–hour limit is exceeded. Therefore, if military exigencies prevent completion of probable-cause review within

48 hours, the fact of those exigencies may be used to rebut the presumption.

The next question is who is constitutionally qualified to conduct the review. PFC Rexroat contends that the probable-cause review must be conducted by a military magistrate. The Government contends that the review need only be made by a neutral and detached official, and that the commander's initial probable-cause determination under RCM 305(d) and the probable-cause review under RCM 305(h), both of which were accomplished within 48 hours in this case, were sufficient to satisfy *Gerstein* and *McLaughlin*.

In cases involving search authorizations, as opposed to imposition of pretrial confinement which is involved in this case, the question whether a commander may qualify as a neutral and detached magistrate has been the subject of many, often fragmented, opinions from this Court. In *United States v. Ezell*, 6 MJ 307 (CMA 1979), Judge Perry and Judge Cook held that a commander could act as a neutral and detached magistrate and issue a search authorization. In his principal opinion, Judge Perry wrote:

> We decline, however, to hold that military commanders are *per se* disqualified to act as neutral and detached magistrates....
>
> In the case of *United States v. Ezell*, Number 31,304, we have determined that the commander acted as an impartial magistrate and that decision is, accordingly, affirmed."

6 MJ at 318, 310. Judge Cook wrote:

> An undeviating line of cases in this Court has acknowledged that a commanding officer is qualified to act as a neutral and detached magistrate to authorize a search in the military community.

6 MJ at 330. Chief Judge Fletcher had difficulty accepting a commander as a military counterpart to a civilian magistrate, but he recognized that a search authorized by a commander upon a showing of probable cause may be reasonable. 6 MJ at 330.

In *United States v. Stuckey*, 10 MJ 347 (CMA 1981), Chief Judge Everett, joined by Judge Fletcher, found a search authorization by a commander to be "reasonable." Chief Judge Everett, however, observed that, while we have "equated" a commander to a federal magistrate, a commander "cannot pass muster constitutionally as a 'magistrate' in the strict sense" and that "the commander is not a true 'magistrate.'" 10 MJ at 361.

More recently, in *United States v. Lopez*, 35 MJ 35 (CMA 1992), we decided that a commander who is neutral and detached is entitled to the same judicial deference on appellate review as a military judge when we review a search authorization for probable cause. Although there were four separate opinions in *Lopez*, a clear majority of this Court decided that the commander qualified as a neutral and detached magistrate in that case.

Our decisions involving review of pretrial confinement have dealt with review of the necessity for continued pretrial confinement, now covered by RCM 305(i) and (j), rather than the initial probable-cause determination now covered by RCM 305(d) and (h), although there is considerable dicta concerning the latter. In *Courtney v. Williams, supra*, this Court entertained a petition for extraordinary relief from a Navy prisoner who had requested the military judge to review the propriety of his pretrial confinement. The military judge ruled that, under then-existing procedures, he had no authority to review pretrial confinement, and the petitioner asked for extraordinary relief. In a decision with three separate opinions, this Court denied relief. Chief Judge Fletcher, joined by Senior Judge Ferguson, held that no relief could be granted because the petitioner had been released from confinement. Chief Judge Fletcher examined *Gerstein v. Pugh, supra*, and the lack of bail procedures in the military and concluded that "a magistrate must decide if a person could be detained and if he should be detained." 1 MJ at 271. Although joining Chief Judge Fletcher, Senior Judge Ferguson noted that the military judge "certainly is not the only fig-

ure" with authority to review pretrial confinement. 1 MJ at 272 n. 2. Judge Cook concurred in the result, stating that a military judge had no authority to review pretrial confinement. 1 MJ at 272.

The *Gerstein* and *Courtney* opinions discuss both the initial probable-cause determination, *i.e.*, whether the person "could be detained," as well as the subsequent review of the necessity for continued pretrial detention, *i.e.*, whether the person "should be detained." Although the issue before our Court in *Courtney* dealt only with the question whether the military judge had authority to review the legality of the petitioner's pretrial confinement, Chief Judge Fletcher's dicta went beyond the issue in that he opined that a "magistrate" must determine whether the person "could be detained" as well as whether the person "should be detained." *Courtney* does not address who qualifies as a "magistrate"; the decision turns on the authority of a military judge to review pretrial confinement.

*United States v. Malia*, 6 MJ 65 (CMA 1978), considered the issue whether a commander could overrule the decision of a military magistrate releasing a soldier from pretrial confinement. Chief Judge Fletcher, joined by Judge Perry, held that the commander could not overrule the military magistrate. Chief Judge Fletcher stated, "The cases which preceded *Courtney* directed necessary pretrial confinement hearings to be conducted by a judge. A magistrate by definition is a judge." 6 MJ at 66 (footnote omitted). Judge Cook dissented, repeating his assertion that the magistrate required by *Gerstein* need not be a judge. The three cases in the *Malia* footnote all involved lengthy pretrial confinement. 6 MJ at 66 n.1. In each case this Court, with Judge Cook dissenting, ordered the military judge to which the case was referred to convene a pretrial session to inquire into the legality of the pretrial confinement. *Milanes–Canamero v. Richardson*, 23 USCMA 710, 50 CMR 916 (1975); *Phillippy v. McLucas*, 23 USCMA 709, 50 CMR 915 (1975); *Porter v. Richardson*, 23 USCMA 704, 50 CMR 910 (1975). Although the *Malia* opinion contains broad language ("A magistrate by definition is a judge."), the holding extended only to the authority of a commander to overrule a military magistrate.

In *United States v. Lynch*, 13 MJ 394 (CMA 1982), the question was whether the staff judge advocate and the special court-martial convening authority were both disqualified from making the decision whether a person should remain in pretrial confinement. Judge Fletcher, joined by Chief Judge Everett, held that neither the staff judge advocate nor the convening authority qualified as a neutral and detached magistrate. In his lead opinion, Judge Fletcher stated that

the following persons authorized by the Code to confine are constitutionally qualified as a judicial officer to make the pretrial confinement decision:

First, a military judge constituted as such within the meaning of Article 26, UCMJ, 10 USC § 826.

Second, a military magistrate empowered by service regulations and untainted by and unconnected with the court-martial referral process.

Third, any other person authorized by the Code to confine who is not directly or particularly involved in the command's law enforcement function.

13 MJ at 397 (citation omitted). Judge Cook again dissented.

Although many of our prior decisions contain broad dicta arguably applying to the initial probable-cause determination, PFC Rexroat's case is the first case in which we must squarely decide who is constitutionally qualified to make and review the initial probable-cause determination.

▆ Turning to the facts of this case, we hold that a commander is not *per se* disqualified to make the initial probable cause review required by *Gerstein*. The Supreme Court has held that a non-lawyer may be constitutionally qualified to determine whether there is probable cause to detain a person. *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d

783 (1972). We have held that a non-lawyer may be constitutionally qualified to determine whether there is probable cause to search. *United States v. Lopez*, 35 MJ at 40. We have held that a commander is not *per se* disqualified to determine whether there is probable cause to search. *United States ·v. Ezell*, 6 MJ 307 (CMA 1979); *United States v. Lopez, supra*. We perceive no reason to treat the determination of probable cause for pretrial confinement differently from probable cause to search. Accordingly, we hold that either of the commander's probable-cause determinations required by RCM 305(d) or (h) can satisfy *Gerstein* if the commander is neutral and detached, and can satisfy *McLaughlin* if conducted within 48 hours.

■ Major Williams' determination of probable cause for pretrial confinement was conducted within the *McLaughlin* time limits. Therefore, either of Major Williams' actions in accordance with RCM 305(d) and (h) could satisfy *Gerstein* and *McLaughlin* if Major Williams was neutral and detached. The charge sheet reflects that he was not the formal accuser in this case. The initial detention of PFC Rexroat was by security personnel at Pearl Harbor and was not at Major Williams' direction. Thus Major Williams was not reviewing his own decision when he made his RCM 305(d) determination. Whether he was otherwise involved in the case against PFC Rexroat cannot be determined from the record. Accordingly, we are unable to determine if Major Williams was constitutionally qualified to perform the initial probable-cause determination required by *Gerstein* and RCM 305(d).

■ We turn next to the probable-cause review conducted by LTC Randall. The record reflects that LTC Randall had no prosecutorial or law enforcement role in this case. We are satisfied, as was the military judge and the court below, that he was neutral and detached; however, as the court below found, LTC Randall was not authorized by Army Regulations to perform the RCM 305(i) review. *See* 36 MJ at 714. Furthermore, since LTC Randall was

not PFC Rexroat's commander, he was not authorized to perform the RCM 305(h) review. Nevertheless, the record shows no legal impediment to LTC Randall's conducting the probable-cause review required by *Gerstein*. While RCM 305 establishes specific procedures for reviewing pretrial confinement, it does not prohibit additional procedures not specifically required by RCM 305, such as LTC Randall's independent review. As a commissioned officer LTC Randall was empowered to order PFC Rexroat into confinement. Art. 9(b); RCM 304(b)(2). LTC Randall was not "directly or particularly involved in the command's law enforcement function." *United States v. Lynch*, 13 MJ at 397. Therefore, we hold that LTC Randall's independent review of the probable cause for pretrial confinement complied with *Gerstein, Courtney*, and *Lynch*, and was completed within the time limits imposed by *McLaughlin*.

The review by the military magistrate, Major Hudson, complied with RCM 305(i) and satisfied the *Courtney* requirement for a "bail" hearing. While Major Hudson was constitutionally qualified to conduct the initial probable-cause review required by *Gerstein*, his review does not satisfy *McLaughlin* because it was not completed within 48 hours.

■ PFC Rexroat argues that the RCM 305(i) review is the only "authorized" probable-cause review and that, because it did not comply with *McLaughlin* in this case, he is entitled to relief. We disagree. RCM 305(d), (h), (i), and (j) all provide for a probable-cause review, any one of which, if conducted by a neutral and detached official within 48 hours, would satisfy *Gerstein* and *McLaughlin*.

■ PFC Rexroat also cites the Drafters' Analysis of RCM 305 for the proposition that RCM 305(c), (d), and (h) were not intended by the President to be the *Gerstein* review. We reject this argument for two reasons. First, the Drafters' Analysis is a reflection of the drafters' intent, not necessarily the President's. *See* Drafters' Analysis, Introduction, Manual, *supra* at A21–3 ("[I]t is important to remember that

the Analysis solely represents the views of staff personnel who worked on the project, and does not necessarily reflect the views of the President in approving it, or of the officials who formally recommended approval to the President."). Second, even if the President intended RCM 305(i) to be the *Gerstein* review, that intent does not preclude some other probable-cause review from satisfying *Gerstein*.

In summary, we hold that Major Williams complied with RCM 305(d) and (h). If he was neutral and detached, he also complied with *Gerstein* and *McLaughlin*, but we cannot tell from the record whether he qualified as a neutral and detached commander. Nevertheless, LTC Randall's independent review satisfied *Gerstein* and *McLaughlin*, even if Major William's compliance with RCM 305(d) and (h) did not. Major Hudson's review satisfied RCM 305(i). Therefore, since *Gerstein*, *McLaughlin*, and RCM 305 all were satisfied, PFC Rexroat is not entitled to relief.

The certified questions are answered in the negative.

The decision of the United States Army Court of Military Review is reversed to the extent that it grants PFC Rexroat 5 days of credit for illegal pretrial confinement. In all other respects the decision below is affirmed.

Judge CRAWFORD concurs.

### APPENDIX

Extract of RCM 305,

Manual for Courts–Martial, United States, 1984

**Rule 305. Pretrial Confinement**

\* \* \*

(d) *When a person may be confined.* No person may be ordered into pretrial confinement except for probable cause. Probable cause to order pretrial confinement exists when there is a reasonable belief that:

(1) An offense triable by court-martial has been committed;

(2) The person confined committed it; and

(3) Confinement is required by the circumstances.

\* \* \*

(h) *Notification and action by commander.*

(1) *Report.* Unless the commander of the prisoner ordered the pretrial confinement, the commissioned, warrant, noncommissioned, or petty officer to whose charge the prisoner was committed shall, within 24 hours after that commitment, cause to be made a report to the commander which shall contain the name of the prisoner, the offenses charged against the prisoner, and the name of the person who ordered or authorized confinement.

(2) *Action by commander.*

(A) *Decision.* Not later than 72 hours after ordering a prisoner into pretrial confinement, or after receipt of a report that a member of the commander's unit or organization has been confined, the commander shall decide whether pretrial confinement will continue.

(B) *Requirements for confinement.* The commander shall direct the prisoner's release from pretrial confinement unless the commander believes upon probable cause, that is, upon reasonable grounds, that:

(i) An offense triable by a court-martial has been committed;

(ii) The prisoner committed it; and

(iii) Confinement is necessary because it is foreseeable that:

(a) The prisoner will not appear at a trial, pretrial hearing, or investigation, or

(b) The prisoner will engage in serious criminal misconduct; and

(iv) Less severe forms of restraint are inadequate.

\* \* \*

(i) *Procedures for review of pretrial confinement.*

(1) *In general.* A review of the adequacy of probable cause to believe the prisoner has committed an offense and of the necessity for continued pretrial confinement shall be made within 7 days of the imposition of confinement.

(2) *By whom made.* The review under this subsection shall be made by a neutral and detached officer appointed in accordance with regulations prescribed by the Secretary concerned.

\*　　\*　　\*

(j) *Review by military judge.* Once the charges for which the accused has been confined are referred to trial, the military judge shall review the propriety of pretrial confinement upon motion for appropriate relief.

\*　　\*　　\*

(k) *Remedy.* The remedy for noncompliance with subsection (f), (h), (i), or (j) of this rule shall be an administrative credit against the sentence adjudged for any confinement served as the result of such noncompliance. Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance. This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served. This credit shall be applied first against any confinement adjudged. If no confinement is adjudged, or if the confinement adjudged is insufficient to offset all the credit to which the accused is entitled, the credit, using the conversion formula under R.C.M. 1003(b)(6) and (7), shall be applied against hard labor without confinement, restriction, fine, and forfeiture of pay, in that order, if adjudged. For purposes of this subsection, 1 day of confinement shall be equal to 1 day of total forfeiture or a like amount of fine. The credit shall not be applied against any other form of punishment.

WISS, Judge (concurring):

I fully concur in the principal opinion. I recognize, as Judge Cox points out, that good commanders *care* about their units and the welfare of the men and women in them. In fact, it was this recognition that a commander is not so thoroughly disinterested as a third party would be that underlay my separate opinion in *United States v. Lopez*, 35 MJ 35, 49 (CMA 1992).

The perhaps-unstated, but certainly implied, distinction at the heart of my *Lopez* opinion, however, is between caring about the unit's welfare and the impact on it in a very general sense from criminal-justice matters, on the one hand, and caring in the more direct sense specifically about the criminal-justice matter then on his or her desk, on the other. *See id.* at 51. It is this same distinction, I believe, that is the foundation of the decision in *United States v. Stuckey*, 10 MJ 347 (CMA 1981), in the context of whether a commander's search authorization based on probable cause was "reasonable." *See* 35 MJ at 51. It also is the same distinction at the foundation of the decision in *United States v. Ezell*, 6 MJ 307 (CMA 1979), which addressed circumstances under which a commander could be constitutionally seen as neutral and detached, again for purposes of issuing a search authorization.

The principal opinion here reflects the same concern about the RCM 305(d), Manual for Courts–Martial, United States, 1984, confinement decision by a commander that I expressed about that officer's probable-cause determination in my separate opinion in *Lopez.* So long as the commander who makes the probable-cause decision mandated by *Gerstein/McLaughlin*[1] is neutral and detached in the latter sense referred to earlier—that is, in the sense of the commander's interest and role as the commander in connection with the criminal offense allegedly committed by the accused—then the pretrial confinee's constitutional safeguards are met in that regard. The remainder of the scheme of reviewing both

**1.** *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *County of Riverside v.* *McLaughlin,* 500 U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

the "could" and "should" confinement decisions in RCM 305, all together, fully assure that a military accused will not be held in pretrial confinement without due process.[2]

COX, Judge (concurring in the result):

I agree that a commanding officer can determine if there is probable cause to place a member of his command in pretrial confinement. I further agree that this must be done "prompt[ly]," *i.e.*, within 48 hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). However, unlike the majority, I would presume regularity; that is, the commander is always qualified to make the decision unless his personal interest in the case disqualifies him. The burden should be on the accused to challenge the commander's qualifications.

The term "neutral and detached commander" is an oxymoron. *See United States v. Lopez*, 35 MJ 35, 42 (CMA 1992) (Cox, J., concurring with modest reservations). Why not recognize that the military commander is statutorily and constitution-ally charged with the responsibility for the morale and discipline of those within the command? Absent evidence to the contrary, we should give full faith and credit to his or her performance of those duties of command and quit trying to force a square peg into a round hole. *See United States v. Morris*, 28 MJ 8, 14 (CMA 1989) (Cox, J., concurring in part and dissenting in part).

SULLIVAN, Chief Judge (concurring in part and dissenting in part):

The commander who initially ordered pretrial confinement is not a neutral and detached magistrate for purposes of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). *See United States v. Malia*, 6 MJ 65, 66–67 (CMA 1978). This Court's decision in *United States v. Lynch*, 13 MJ 394 (CMA 1982), did not alter this precedent. To the extent that this Court undermines these decisions and affirms on this basis, I dissent. Otherwise I agree with the approach of the majority.

---

**2.** Magistrate review of pretrial confinement is one of the factors pointed to by the majority in *United States v. Kossman*, 38 MJ 258 (CMA 1993), that reassured the majority there that there was no continued need for the speedy-trial standard of *United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971). More specifically, the *Kossman* majority trumpeted the scheme under which magistrates and judges, not just commanders, now have the keys to the jailhouse. If this building block in the rationale of the major-ity in that case is to have substance and not just appearance, there can be no dilution of the full panoply of those safeguards that are set out in RCM 305, and neither can there be any cutting corners when it comes to determining whether a commander who makes the *Gerstein/McLaughlin* decision truly is neutral and detached under the facts of the case; there simply cannot be any tendency toward a this-is-close-enough approach.