# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

### UNITED STATES

#### v.

### Joseph P. REDLINSKI
### Seaman Apprentice, U.S. Coast Guard

### CGCMS 24171
### Docket No. 1116

### 30 October 2001

Special Court-Martial convened by Commander, Coast Guard Group Moriches.  Tried at East Moriches, New York, 31 March 1999.

| | |
|---|---|
| Military Judge: | CDR Thomas R. Cahill, USCG |
| Trial Counsel: | LT Richard T. Schachner, USCG |
| Detailed Defense Counsel: | LT Brian C. Summerfield, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCGR |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel | LCDR Chris P. Reilly, USCG |
| | LT Daniel J. Goettle, USCG |

### BEFORE
### PANEL THREE
### BAUM, KANTOR, BRUCE
Appellate Military Judges

BRUCE, Judge:

Appellant was tried by special court-martial before a military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of two specifications of wrongful distribution of marijuana, two specifications of wrongful use of marijuana, one specification of wrongful possession of marijuana, and one specification of attempted distribution of marijuana, in violation of Articles 112a and 80, UCMJ.  Appellant was sentenced to a reduction to E-1, forfeiture of $600 pay per month for six months, four months confinement, and a bad-conduct discharge.  The convening authority approved the sentence as adjudged and ordered it executed, but suspended the confinement in excess of 100 days for six months, in accordance with the pretrial agreement.  The convening authority also credited the accused with sixty days confinement credit ordered by the military judge.[1]

---

[1] Appellant received six days credit for time he spent in pretrial confinement, twenty-seven days credit for time spent in restriction tantamount to confinement prior to trial, and twenty-seven days credit for the failure to comply

Appellant has assigned one error—that his fundamental right to a fair pretrial motion hearing was prejudiced when the convening authority, testifying as a government witness against Appellant's motion, gave false testimony and then later took action on Appellant's case. However, the remedy Appellant seeks is not a rehearing on the pretrial motion and a new convening authority action, but appropriate relief in the form of additional credit against his sentence.

At trial, before pleading guilty, Appellant made a motion for appropriate relief from illegal pretrial confinement on the basis that his commanding officer, Commander, Coast Guard Group Moriches ("Commander"), who was also the convening authority, was not acting as a neutral and detached magistrate when he issued the 48-hour probable cause memo required by Rule for Courts-Martial (RCM), Rule 305(h). After hearing testimony and considering documents related to the investigation of the Appellant and his pretrial confinement, the military judge made findings of fact. He concluded: that the Commander's involvement in the case, prior to continuing the Appellant's pretrial confinement, was within the scope of his official duties; that the Commander did not have a personal interest in the case; and, that the Commander was not an accuser in the case. The military judge denied the motion[2] stating that the Commander "acted as a neutral and detached commander when he reviewed the need for continued pretrial confinement." R. at 163.

Some time after trial and the convening authority's action, the Officer-in-Charge (OIC) of the USCGC POINT WELLS and the OIC of Station Montauk, who were present at the trial and heard the Commander's testimony, came forward with written statements asserting that a part of that trial testimony was untruthful. Appellant has moved this Court to attach these written statements to the record. Based on these statements, he questions the factual basis and the reliability of the military judge's ruling that the Commander was acting as a neutral and detached magistrate when he found probable cause to continue Appellant's pretrial confinement.

I. Appellant's Motion to Attach Documents

The Appellant's motion to attach documents is granted, for purposes of our determining if a further evidentiary hearing is required. *United States v. Ginn*, 47 M.J. 236 (1997). We find that such a hearing is not needed because, without deciding if the Commander gave testimony at trial that was false in any respect, we have determined that he was not neutral and detached so as to be able to make the probable cause determination required by *United States v. Rexroat*, 38 M.J. 292 (CMA 1993). That is not to say that we view the allegation concerning the convening authority's testimony as a trivial matter or that further action on the allegation is unwarranted.

Giving false or inaccurate testimony at a court-martial is a matter we take very seriously, and when it is the convening authority who provides that testimony, the matter is of even greater

---

with RCM 305 in connection with the restriction tantamount to confinement. These sixty days of confinement credit were applied to the 100 days confinement ordered approved and executed by the convening authority.

[2] Appellant made two other motions for appropriate relief based on his subsequent pretrial restriction. The military judge granted some relief after finding that Appellant's restriction was tantamount to confinement. *See supra* note 1.

concern. Willfully giving false testimony is an offense that may be punishable either as perjury under Article 131, UCMJ, or as unlawful command influence under Article 98, UCMJ. Where inaccurate testimony results from a failure to exercise ordinary care to testify correctly, that may be punishable as a negligent dereliction of duty under Article 92, UCMJ.

Concern for the legitimacy of the truth-finding function of courts-martial certainly warrants action by appropriate authorities to ensure that allegations of false or culpably inaccurate testimony are thoroughly investigated. Coast Guard policy requires appropriate authorities to respond to allegations of improper influence on a military justice proceeding with administrative or disciplinary measures, when the situation calls for them. Military Justice Manual, Commandant Instruction M5810.1D § 6.A.2.b (Aug. 17, 2000). Information concerning this matter was initially sent by the First Coast Guard District's Legal Officer to the Coast Guard Chief of Military Justice. Although the documents submitted by Appellant leave the resolution of the instant allegations unclear, we assume that cognizant authorities, either in the Commander's chain of command or the Office of Chief Counsel, have investigated this matter and taken appropriate action. If that is not the case, then this matter should be given further consideration by appropriate authority. We exercise our authority to order evidentiary proceedings in support of our duty to decide cases. The fact that we decide this case on other grounds makes it inappropriate for this Court to pursue the allegation of false or inaccurate testimony further.

## II. The 48-Hour Probable Cause Review

As noted above, we have not decided this case on the basis asserted by Appellant. We find that there was merit in Appellant's pretrial motion to grant appropriate relief because the Commander was not neutral and detached, so as to be able to properly conduct the 48-hour probable cause review of Appellant's pretrial confinement. Having determined that Appellant is entitled to appropriate relief on the merits of his pretrial motion, it is unnecessary for us to consider if the original hearing was unfair. Were we to decide that the original hearing was unfair, as Appellant asserts, the obvious remedy would be to order a new pretrial motion hearing. However, Appellant requested, instead, that this Court grant appropriate relief. That being the case, we see no basis for Appellant to complain if we find that there is merit in the pretrial motion and grant appropriate relief, as we do.

We conclude that the Commander was not sufficiently neutral and detached so as to be able to properly conduct the 48-hour probable cause review of Appellant's pretrial confinement, because he became too directly involved in the unit's law enforcement case against the Appellant. This involvement took two forms, which together indicate that he had become too personally interested in this case. First, the Commander was involved in influencing his operations officer to order the Appellant into pretrial confinement. Second, at about the same time, he directed an inspection, which we find was a subterfuge for a search for evidence to reinforce the command's case against the Appellant.

A. Facts

At trial, the factual basis for the motion was based on evidence in the form of a stipulation of fact, Appellate Exhibit (AE) V, other documentary evidence, AE VI-XI, and the testimony of the Commander. The evidence shows that Appellant was attached to the cutter POINT WELLS, located at Station Montauk, in the winter of 1998-99. During that time, a person stationed aboard the POINT WELLS came forward and informed the OIC that Appellant had used marijuana and sold it to other Coast Guard members from POINT WELLS and Station Montauk. This person became a confidential informant. About 5 January 1999, the OICs of the POINT WELLS and Station Montauk informed the Commander of the allegations that someone on POINT WELLS was using and selling drugs. An investigation by the Coast Guard Investigative Service (CGIS) was initiated. On 19 January 1999, the Commander ordered a health and safety inspection of the POINT WELLS and Station Montauk, including a urinalysis sweep.

On 19 February 1999, the Commander ordered a second health and safety inspection, including a urinalysis sweep, of the POINT WELLS and Station Montauk. He ordered the operations officer for Group Moriches to observe the inspection. He authorized her to use dogs, and further authorized her to make an assessment of whether pretrial confinement was required. R. at 121. While at Station Montauk on 19 February 1999, she ordered Appellant into pretrial confinement. On 20 February 1999, the Commander found probable cause to continue Appellant's pretrial confinement. An Independent Review Officer (IRO) hearing was conducted on 24 February 1999, and Appellant was released from pretrial confinement after the IRO found that lesser forms of restraint appeared to be adequate, but had not been tried.

The military judge made these findings on this issue at trial:

> In early January 1999, Commander, Group Moriches, received information concerning possible drug use and distribution by one or more Coast Guard members assigned to Coast Guard Cutter Point Wells.

> [The] Deputy Group Commander, Group Moriches requested investigative assistance from the Coast Guard investigative service.

> [The Commander] received regular reports on the progress of that investigation. The subsequent investigation by the Coast Guard Investigative Service identified Seaman Appellate (sic) Redlinski as involved in the misconduct. The investigation also indicated that SA Redlinski had made statements in the presence of others in which he threatened grievous bodily harm to persons involved in providing any information to Coast Guard Investigative Service. At the time SA Redlinski made those statements they were not directed at a specific individual whose identity was known to SA Redlinski, nor was he aware of any specific information which had been provided to CGIS. In a written statement provided to CGIS on 19 February, SA Redlinski admitted that he thought that someone on Coast Guard Cutter Point Wells may have revealed information about attempts to interfere with a urinalysis test and that he said, quote, "if I find out who told, I would kill them," unquote.

4

On 19 February 1999, [] the Group Moriches operations officer, ordered SA Redlinski into pretrial confinement. At that time information was available upon which [she] could reasonably conclude that offenses triable by Court-Martial had been committed, that SA Redlinski had committed those offenses, and that pretrial confinement was necessary under the circumstances to prevent further serious misconduct such as attempts to injure or intimidate potential witnesses. [She] had not been directed to place SA Redlinski in pretrial confinement, although her order which is contained in Appellate Exhibit X, is from Commander, Group Moriches, and it is signed by direction. [She] ordered pretrial confinement in her individual capacity as a commissioned officer. [The Commander] reviewed the need for continued pretrial confinement on 20 February 1999. This review occurred within the 48-hour time period required under RCM 305 and applicable case law. [The Commander's] prior involvement in this case was within the scope of his official responsibilities as commander of Coast Guard Group Moriches. *[He] did not have a personal interest in this case* nor is he the accuser. *[The Commander] acted as a neutral and detached commander when he reviewed the need for continued pretrial confinement.*

An independent reviewing officer conducted a hearing on SA Redlinski's pretrial confinement on 24 February 1999. This is reflected in Appellate Exhibits VI and VII. As reflected in those exhibits, he determined continued pretrial confinement was not warranted because SA Redlinski's prior comments were general statements and not threats to a specific individual. He specifically noted that less severe forms of restraint may have been sufficient.

SA Redlinski was released from pretrial confinement on 24 February 1999, after serving a total of six days of pretrial confinement.

R. at 160-63 (emphasis added).

In our view, the part of the military judge's findings that we have italicized, above, are conclusions of law rather than findings of fact, or are, at best, mixed findings of fact and law. We disagree with the finding that the Commander remained qualified to perform a neutral and detached probable cause review, and we disagree with the finding that he did not have a personal interest in this case, to the extent that it suggests that he was not so "directly or particularly involved in the command's law enforcement function" as to be disqualified from performing a neutral and detached probable cause review. *Rexroat*, 38 M.J. at 298 (quoting *United States v. Lynch*, 13 M.J. 394, 397 (CMA 1982)).

We add our own findings of fact as follows:

On 19 January 1999, the Commander ordered a urinalysis sweep of all members assigned to the POINT WELLS and Station Montauk. He issued the order on his own initiative, because he was concerned about the confidential informant's reports of drug use by members of the units. Based on the results of this urinalysis, Appellant was charged with use of marijuana, on or about 18 January 1999 (specification 5 of the Charge).

5

In the days before a meeting with CGIS personnel, on 18 February 1999, the Commander became aware that Appellant was a subject of the investigation on the POINT WELLS. R. at 125. On 19 February 1999, the Commander ordered a second urinalysis sweep of the POINT WELLS and Station Montauk, again on his own initiative. This second sweep occurred thirty-one days after the earlier drug sweep. The Commander directed his operations officer to go to the units and observe the urinalysis sweep. He also directed her to assess whether or not pretrial confinement of Appellant was necessary. They discussed the possibility of imposing pretrial confinement.

As the military judge found, Appellant made a statement to CGIS on 19 February 1999, and admitted that he had made a statement to the effect that if he found out who had told about his efforts to mask drugs in his urine, he would kill them. The military judge also found that the operations officer had information from which she could conclude that Appellant might attempt to injure or intimidate potential witnesses. The subsequent Approval of Continued Pretrial Confinement letter and the decision of the Initial Review Officer further support the fact that it was the knowledge of threats made by Appellant that prompted his being placed in pretrial confinement.

Despite the fact that the reason for placing Appellant in pretrial confinement was information from CGIS that he had made threats, the confinement order signed by the operations officer on 19 February 1999 does not mention threats by the Appellant as a reason for confinement. Instead, the letter relies on the impact of the Appellant's alleged drug offenses on the effectiveness of his unit. This leads us to infer that the confinement order was prepared, or well thought-out, before the operations officer arrived at Station Montauk and learned of the threats, and that she neglected to modify the letter to include the threats as a basis for confinement before she signed it.

This level of advanced preparation would have been unlikely to occur if the operations officer did not expect to place Appellant in pretrial confinement when she went to Station Montauk on 19 February 1999. This causes us to find that, if the Commander did not direct the operations officer to place Appellant in pretrial confinement when they discussed the possibility of pretrial confinement, he also did not leave much doubt in her mind that that was the result he wanted.

Immediately after ordering Appellant into pretrial confinement, the operations officer called the Commander to advise him that she had placed Appellant in pretrial confinement. We find that she could just as easily have called him prior to ordering Appellant into pretrial confinement, but she was aware that the Commander wanted to "keep distance between [himself] as Convening Authority and what was occurring at Station Montauk." R. at 122.

B. Discussion

The Supreme Court has held that, when a person is confined prior to trial, there must be a prompt determination of probable cause by a person who is neutral and detached. *Gerstein v. Pugh*, 420 U.S. 103 (1975). Further, probable cause determinations made more than forty-eight

hours after pretrial confinement are presumptively untimely. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In *Rexroat*, the Court of Military Appeals held that RCM 305(h) is consistent with the requirements of *Gerstein* and *McLaughlin* "when pretrial confinement is reviewed by a neutral and detached commander, if the review is accomplished within the time limits established by *McLaughlin*." *Rexroat*, 38 M.J. at 294. In this case, the issue is not whether the probable cause review was conducted in a timely manner, but whether the commander who performed the review was neutral and detached.

The *Rexroat* Court stated, "[W]e hold that a commander is not *per se* disqualified to make the initial probable cause review required by *Gerstein*." *Id.* at 297. This means that when the neutrality and detachment of a commander is challenged, we are required to determine the issue on a case by case basis. The *Rexroat* case suggests some factors that may be helpful in deciding if a commander is neutral and detached. They are: (1) whether the commander is a formal accuser in the case; (2) whether the commander personally ordered or directed that the accused be placed in pretrial confinement; and, (3) whether the commander's involvement in the case otherwise included a prosecutorial or law enforcement role. *Id.* at 298. Clearly, in the absence of other evidence of bias, if a review of these factors shows that the commanding officer had no reason to be personally interested in the case, we should conclude that the commander is neutral and detached, as *Rexroat* suggests.

Moreover, we might well find that a commander was neutral and detached despite having some prosecutorial or law enforcement role in the case, so long as that role reflects no more than an official interest in the case. It is when the role played by the commander begins to reflect some personal interest in the accused's case that the commander's ability to act as a neutral and detached reviewer must be seriously questioned. The concurring opinions of Judges Wiss and Cox in the *Rexroat* case specifically address this distinction between a commander's official interest and personal interest in a law enforcement case. *Id.* at 300-01.

Shortly after *Rexroat* was decided by the, then, Court of Military Appeals, a panel of this Court addressed the issue of a commander's ability to render a neutral and detached probable cause determination. *United States v. Lipscomb*, 38 M.J. 608 (CGCMR 1993). In that case, the accused's commanding officer ordered him into pretrial confinement and afterward served as the convening authority for the accused's special court-martial. *Id.* at 609, 610. The Court noted that: "Nothing has been raised bearing even the slightest hint of personal interest that would have disqualified [the commanding officer] under the accuser concept. Furthermore, there is nothing in the record indicating participation in any prosecutorial capacity." *Id.* at 610.

In *United States v. Roberson*, the Air Force Court of Criminal Appeals found no abuse of discretion in the trial judge's ruling that a commanding officer was not disqualified from properly conducting a probable cause review, "merely because the squadron commander was aware of previous nonjudicial punishment actions taken against the appellant, or because he subsequently was the accuser in appellant's court-martial." 43 M.J. 732, 735-36 (A.F.Ct.Crim.App. 1995).

These decisions suggest that a commanding officer may make a neutral and detached probable cause determination despite having ordered the accused into pretrial confinement or

even when later acting as the formal accuser in the case. We recognize that a commanding officer's official duties may sometimes include placing accused members into pretrial confinement, serving as a court-martial convening authority, and performing other functions related to good order and discipline—such as authorizing searches or inspections—and that a commanding officer may be able to perform these duties without losing the objectivity required to conduct a neutral and detached probable cause review. However, when the issue is properly preserved, and the facts show that the commanding officer's involvement in the case extended beyond necessary official actions in support of prosecutorial or law enforcement functions, we must determine if the commanding officer was neutral and detached, as *Rexroat* requires.

In this case, the Commander's probable cause determination has been challenged. As Group Commander, he was a commanding officer in the chain of command over Appellant. He was also the convening authority for Appellant's court-martial. The Commander was not the accuser in this case. Without more, there is nothing in these facts to suggest that the Commander was unable to perform a neutral and detached probable cause review. However, there are more facts that must be considered.

The command-directed urinalysis sweep on 19 January 1999 appears to have been a well justified response to the report of the confidential informant that someone on the POINT WELLS was using and distributing drugs. Although this urinalysis sweep resulted in a charge of using marijuana being placed against Appellant based on a positive urinalysis test result, we find that this was an inspection ordered to assess the drug climate at the POINT WELLS and Station Montauk. We find that the circumstances of this inspection reveal nothing more than an official interest in the drug climate at those units. As we find this to be a proper administrative investigation, we do not find that it has any tendency to show that the Commander had become "directly or particularly involved in the command's law enforcement function." *Rexroat*, 38 M.J. at 297.

We find, however, that the Commander subsequently took actions that did involve him in the command's law enforcement function with respect to this particular case, to the extent that he could no longer perform a neutral and detached probable cause review. By 18 February 1999, the Commander knew that Appellant was a suspect in this case. We do not know all of what happened next, but we do know that on 19 February 1999, he decided to order another urinalysis sweep of the POINT WELLS and Station Montauk, although such a sweep had been conducted only thirty-one days before. We know that he also decided to send his operations officer to observe the inspection and assess whether Appellant should be placed in pretrial confinement. He sent her because he was concerned that if he acted himself he would become too close to the case.

We are not persuaded that this second urinalysis sweep was primarily for a proper administrative purpose, since any such purpose should have been served by the inspection conducted one month earlier. We find that the urinalysis sweep on 19 February 1999 was a subterfuge search, focused on Appellant and obtaining evidence that would support the decision to place him in pretrial confinement.

We are also not persuaded that the operations officer was entirely free of the Commander's influence when she ordered Appellant into pretrial confinement. She had discussed that "possibility" with the Commander just prior to going to Station Montauk on 19 February 1999. Additionally, she signed a prepared confinement order that did not even mention the new information she learned on the 19th—that Appellant had admitted to making threatening statements—even though it later appeared that the threats were the most significant reason for ordering Appellant into pretrial confinement. We find that, if the Commander did not direct his operations officer to place Appellant into pretrial confinement, he also did not leave much doubt in her mind that that was what he wanted.

Taken together, we find that the Commander's involvement in his operations officer's decision to place the Appellant in pretrial confinement, and in ordering a subterfuge search to gather additional evidence against the Appellant, went beyond the impersonal, official, actions necessary in support of the command's prosecutorial or law enforcement functions. In view of this, we find that the Commander became "directly or particularly involved in the command's law enforcement function," *Rexroat*, 38 M.J. at 297, and could not be neutral and detached with respect to Appellant's pretrial confinement.

Where, as here, a review of all of the circumstances shows that the commander's involvement and interest in a case has gone beyond performing those official functions he is normally expected to perform for the general good of his command, we must protect the Appellant's right to have a neutral and detached officer decide if his pretrial confinement is based on probable cause. In this case, the Commander became too personally involved in the law enforcement case against Appellant when, about 19 February 1999, he directed that a subterfuge search be conducted, and influenced his operations officer's decision to place Appellant in pretrial confinement. Thereafter, the Commander could not perform a neutral and detached probable cause review.

## C. Appropriate Relief

The military judge erred in denying the Appellant's motion for appropriate relief. Appellant is entitled to credit for the time he spent in pretrial confinement after he should have received a proper 48-hour probable cause review until he was released from pretrial confinement. Appellant was placed in pretrial confinement at 1738 on 19 February 1999. The time for the 48-hour probable cause review expired after 1738 on 21 February 1999. Accordingly, Appellant's illegal pretrial confinement started on 21 February 1999. He was released from pretrial confinement on 24 February 1999. Counting both the day the illegal pretrial confinement commenced, and the day Appellant was released from pretrial confinement, he spent a total of four days in illegal pretrial confinement. *See United States v. DeLeon*, 53 M.J. 658 (Army Ct.Crim.App. 2000).

Generally, the remedy for illegal pretrial confinement that results from a failure to comply with RCM 305 is additional administrative credit calculated on a 1-to-1 basis, or one day of credit for each day the accused was unlawfully held in pretrial confinement. RCM 305(k); *United States v. Rock*, 52 M.J. 154 (1999). Appellant contends that this Court may award additional credit for each day of pretrial confinement in cases of abuse of discretion or unusually

harsh circumstances, and argues that the remedy should be "effective," not merely formulaic. *See United States v. Suzuki*, 14 M.J. 491, 492 (CMA 1983). Appellant requests 10-to-1 credit for his illegal pretrial confinement.

The Government counters that such a remedy is extraordinary, and that this case does not warrant such relief, distinguishing Appellant's situation from other cases. We agree that this case does not involve unusually harsh circumstances, and that a 10-to-1 credit is not warranted. For example, in *United States v. Tilghman*, the convening authority ordered confinement despite a judicial determination that it was unwarranted. 44 M.J. 493 (1996). In *Suzuki*, the accused was billeted with convicted and sentenced prisoners, and placed in solitary confinement until he agreed to sign a work waiver. 14 M.J. at 492. In another case, *United States v. Cruz*, the accused was apprehended at a public ceremony convened for that purpose, and then paraded in shame before his unit. 25 M.J. 326 (1987).

We do hold, however, that Appellant's commander abused his discretion by deciding to perform the probable cause review. Although this commanding officer was not *per se* ineligible to perform the probable cause review, he did not simply make a good faith misjudgment about how personally involved he had become in the case. When the Commander performed the probable cause review, he was clearly not neutral and detached concerning the Appellant's pretrial confinement. We have found that the Commander personally took the initiative to influence his operations officer to place Appellant in pretrial confinement. If he did not direct her to place Appellant in pretrial confinement, he also did not leave much doubt in her mind that that was what he wanted. About the same time, he took the initiative to order a subterfuge search, focused on Appellant and obtaining evidence that would support the decision to place Appellant in pretrial confinement. From that point on, he could not have concluded in good faith that he was neutral and detached. Therefore, we hold that his decision to conduct the probable cause review was an abuse of discretion. As a result, we decide that Appellant should receive two days of credit for each of the four days pretrial confinement he served without a proper 48-hour probable cause review—for a total of eight days credit. RCM 305(k).

### D. Application of Confinement Credit

The final issue to be resolved, here, is how to apply the additional eight days of credit. Counsel for the Government and the Defense appear to agree that, under RCM 305(k) and *Rock*, *supra*, the eight day credit for the failure to comply with RCM 305 should be applied against the adjudged sentence. We do not agree. We hold that credit for a failure to comply with RCM 305(k) is an "administrative" credit or a "confinement" credit that must be applied against the sentence approved and ordered executed.

Counsels' reliance on *Rock* is not well founded. The *Rock* case can be easily misunderstood—especially if it is viewed as broadly addressing the application of credits, rather than focusing more narrowly on the issue of how the terms of a pretrial agreement may affect the application of a credit. As we understand *Rock*, the basic guidance there is that the normal application of a credit against either the adjudged sentence, or the sentence approved and ordered executed, may be changed by specific terms in a pretrial agreement, except that "[p]retrial

confinement, or its equivalent, cannot be bargained away in arriving at a sentence limitation." 52 M.J. at 157.

Part of the problem in dealing with the application of credits is that courts and commentators have used different labels for credits without defining what the labels mean. Also, for example, some have suggested that certain credits should be applied against the approved sentence, when what they seem to mean is that the credit should be applied against the sentence approved and ordered executed. In many cases, the difference between an adjudged sentence to confinement and what confinement the accused actually is ordered to serve does not depend on what is approved, but on what is ordered executed and what is suspended after approval.

For purposes of our discussion, we will label credits that are applied to the sentence adjudged as "judicial" or "punishment" credits, and credits that are to be applied to the sentence approved and ordered executed as "administrative" or "confinement" credits. Depending on the basis for the credit, it may always be administrative or it may be either administrative or judicial depending on the circumstances. For example, *Allen*[3] pretrial-confinement credit and *Mason*[4] credit for pretrial restriction equivalent to confinement are always administrative. *Rock*, 52 M.J. at 157. Those credits for actual or constructive pretrial confinement are always applied by the convening authority against the sentence that has been approved and ordered executed. *Pierce*[5] credit for non-judicial punishment may be judicial or administrative. Because the accused is the gatekeeper as to how *Pierce* credit is handled, *United States v. Gammons*, 51 M.J. 169, 179 (1999), the credit may be applied by the sentencing authority against the sentence adjudged, it may be applied by the convening authority against the sentence approved and executed, and it might be applied in both ways or neither way. Based on *Rock*, it appears that those credits that are not always administrative can be the subject of a pretrial agreement provision that will determine how the credit is applied, regardless of how it might be applied in the absence of the pretrial agreement. 52 M.J. at 156-57.

In *United States v. Gregory*, the, then, Army Court of Military Review held that credit pursuant to RCM 305(k) was required for failure to comply with the requirements of RCM 305 in a case in which an accused was subjected to pretrial restraint tantamount to confinement. 21 M.J. 952, 955 (ACMR 1986). The court then went on to decide how the RCM 305(k) credit should be applied. It noted that RCM 305(k) states that credit should be applied against the "adjudged sentence," but found the provision to be ambiguous. *Id.* at 957. Using rules of construction, the Army Court concluded that the credit should be applied to the approved sentence rather than the adjudged sentence. *Id*. at 958. The convening authority approved three months confinement and did not suspend any confinement. *Id.* at 953. Accordingly, the approved sentence, and the sentence approved and ordered executed were the same.

In *Coyle v. Commander*, the Court denied extraordinary relief in a case where an accused received *Allen* credit, RCM 305 credit, and credit for pretrial punishment that did not involve confinement. 47 M.J. 626, 628, 630 (Army Ct.Crim.App. 1997). In that case, the Court concluded that the *Allen* credit and the RCM 305 credit were properly applied against the

---

[3] *United States v. Allen*, 17 M.J. 126 (CMA 1984).
[4] *United States v. Mason*, 19 M.J. 274 (CMA 1985).
[5] *United States v. Pierce*, 27 M.J. 367 (CMA 1989).

approved sentence, and that the "punishment" credit was properly applied against the adjudged sentence. The Court noted that the "law makes a distinction between [confinement credit and punishment credit] and the way they are applied." *Id.* at 629. Thus, the Army Court viewed *Allen* credit and RCM 305 credit as "confinement" credit, and the credit for pretrial punishment that did not involve confinement as "punishment" credit. In *Coyle*, the decision indicates that the convening authority approved confinement for one year and did not suspend any confinement. Therefore, again, the approved sentence was the same as the sentence approved and ordered executed.

We do not view *Rock* as being inconsistent with these Army Court decisions. We are not bound by these Army Court decisions, but we are persuaded by their reasoning. In particular, we are not inclined to construe RCM 305(k) in a manner that would often deprive an accused of meaningful credit, when this provision and related provisions, such as RCM 1107(f)(4)(F), make the President's intention ambiguous. We also note that since 1986, when *Gregory* was decided, the President has not acted to change RCM 305(k) to reflect a different intention.

In *United States v. Plowman*, the Navy-Marine Corps Court stated that RCM 305(k) credit would be applied to the adjudged sentence. 53 M.J. 511 (N.M.Ct.Crim.App. 2000). There was no discussion of this issue beyond the conclusory statement and a citation to *United States v. Coburn*, 42 M.J. 609, 613 (N.M.Ct.Crim.App. 1995). However, in *Coburn*, the Court ultimately held that: "The appellant is entitled to receive an *administrative* credit against the *approved* sentence in an amount equal to 21 days forfeiture of pay." *Id.* (emphasis added). Altogether, we find *Plowman* to be of little help in our analysis of this issue.

The Air Force Court also recently addressed this issue in *United States v. Doane*, 54 M.J. 978 (A.F.Ct.Crim.App. 2001). There, the Court determined that the accused was entitled to 11 days credit for failure to comply with RCM 305, and an additional 11 days credit pursuant to RCM 305(k) for the conditions of his pretrial confinement, for a total of 22 days of RCM 305(k) credit. The majority held that the credit should be applied to the sentence adjudged. The Air Force Court based this holding on the language of RCM 305(k) and the court's interpretation of *Rock*. In *Doane*, the adjudged confinement was for three years and the approved confinement was for twelve months. Applying the credit to the adjudged sentence, the Court majority held that the accused was entitled to no relief.

As noted above, we are persuaded that the language of RCM 305(k), and accompanying provisions in the MCM, create an ambiguity as to the President's intention on this issue. Therefore, the *Doane* majority's reliance on the language of the rule is unconvincing. We also read the *Rock* decision more narrowly and we fail to find support there for the conclusion reached in *Doane*. Accordingly, we will follow *Gregory* rather than *Plowman* and *Doane*, and direct that Appellant's eight days of RCM 305(k) credit be applied against the sentence approved and ordered executed.

### III. Convening Authority Action

Appellant questioned the ability of the convening authority to have been unbiased in his action in this case. However, Appellant specifically indicated that he saw no practical benefit in

having the case remanded for a new convening authority action. We see no reason to question Appellant's decision to waive this issue on appeal. Were we to find that the convening authority was disqualified from acting on Appellant's court-martial, the appropriate relief would be to remand the case for a new convening authority action. Under the circumstances of this case, we do not find Appellant's view that such relief would have no practical benefit to be untenable.

### IV. Attempted Distribution of Marijuana

The majority in this case affirms the finding of guilty as to specification 2 of the Charge. I would disapprove the finding of guilty as to specification 2 of the Charge and dismiss that specification. Although not raised by Appellant, I find that the providence inquiry in this case did not establish a sufficient factual basis for Appellant's plea of guilty to the offense of attempted distribution of marijuana on February 16, 1999. In my view, the case of *United States v. Byrd*, 24 M.J. 286 (CMA 1987), is a binding precedent that cannot be distinguished from this case in any material way. Accordingly, this court is bound to follow its holding. *United States v. Allbery*, 44 M.J. 226 (1996).

In this case, the offense that was allegedly attempted was distribution of marijuana. According to the stipulation of fact, Prosecution Ex. 1, and the providence inquiry, R. at 193-97, Appellant met another Coastguardsman, a petty officer, at a corner store off-base and agreed to purchase marijuana for that petty officer ("PO"). Prosecution Ex. 1. The Appellant accepted $300.00 from the PO in order to purchase two ounces of marijuana for him. *Id.* Appellant admitted that his intention was to purchase marijuana for the PO and deliver the marijuana to him. *Id.* The Appellant then started back to the Coast Guard station to see about buying the marijuana for the PO. *Id.* On his way back to the station, the Appellant was stopped and apprehended by Drug Enforcement Administration officers. *Id.* That was as far as the scheme went.

In *Byrd*, the accused pleaded guilty to attempted distribution of marijuana. 24 M.J. at 287. Following a providence inquiry, he was convicted in accordance with his pleas. *Id.* The providence inquiry revealed that Byrd agreed to obtain marijuana for an individual who, unknown to Byrd, was a government agent. *Id.* Byrd accepted $10.00 from the agent and agreed to meet the agent a half hour later with the marijuana. *Id.* Byrd then left with some others to go to a location where marijuana could be purchased. *Id.* He almost immediately decided not to go through with the agreement to distribute marijuana and never purchased marijuana to complete the deal. *Id.* at 287-88. "The military judge concluded that, 'when . . . [appellant] took the money and went in the cab, . . . [he was] taking a direct step toward the commission of distribution of marijuana.' Consequently, the guilty pleas were accepted." *Id.* at 288.

The Court of Military Appeals found that Byrd did not plead providently to attempted distribution of marijuana because his acts did not go beyond mere preparation. "Even though appellant had received $10.00 from the undercover agent and had left Fort Gordon in a taxicab enroute to a liquor store where marijuana could be purchased, his conduct to that point had not gone beyond preparation." *Id.* at 290. The Court, then, went on to say, "if Byrd had gone off-post and obtained marijuana but had been arrested before he returned to deliver it to his buyer, the evidence would have sustained a conviction for attempt to distribute." *Id.*

In general, it can be very difficult to draw the line between an act "amounting to more than mere preparation" and an act in furtherance of an attempted crime that is only preparatory. In the absence of a controlling precedent from our superior Court, it might be very difficult to decide this case. But here we have a controlling precedent that is as factually similar to the case before us as one could reasonably ask for, and our superior Court has done the line drawing for us. While the Court of Appeals for the Armed Forces is free to reconsider its prior decisions in light of new developments,[6] it seems to me that the duty of the Coast Guard Court of Criminal Appeals is to follow the guidance of our superior Court. *Allbery*, 44 M.J. at 227-28. In my view, there is no reasonable basis for distinguishing this case from *Byrd*.

Based on *Byrd*, I must conclude that Appellant's actions in accepting $300.00 from the PO, and departing to obtain marijuana, did not go beyond mere preparation. Therefore, the providence inquiry failed to establish a factual basis for one of the essential elements of an attempt—that the act of the accused amounted to more than mere preparation. The Appellant's conclusory admission at trial that his acts amounted to more than mere preparation, was nothing more than a mistake of law on his part that does nothing to repair the factual insufficiency of his plea. The military judge erred by accepting the plea, and I would not affirm a finding of guilty that lacks a sufficient factual basis.

In accordance with RCM 910(e), the military judge "shall not" accept a guilty plea unless the providence inquiry establishes that there is a factual basis for the plea.

There are four elements of attempt:

(1) That the accused did a certain overt act;
(2) That the act was done with the specific intent to commit a certain offense under the code;
(3) That the act amounted to more than mere preparation; and
(4) That the act apparently tended to effect the commission of the intended offense.

Part IV ¶ 4.b., MCM (2000 ed.).[7]

---

[6] The *Byrd* case was decided prior to *United States v. Prater*, 32 M.J. 433 (CMA 1991). While *Prater* may have altered our jurisprudence with respect to *post hoc* attacks on guilty pleas, it does not detract from the requirement that guilty pleas have a sufficient factual basis before they can be accepted by the military judge.

[7] In my view, the majority's decision on this issue has a tendency to merge two of the four elements—those that require proof that the act was done with the specific intent to commit the offense, and that the act amounted to more than mere preparation. If the proof required to show more than mere preparation varies in each case with the relative strength or weakness of the proof of specific intent, it will be very difficult indeed to consistently draw the line between acts that are more than mere preparation and those that are not. By conflating these two elements, the majority renders the requirement for more than mere preparation essentially meaningless in any case where there is strong evidence of intent to commit the offense. These are two separate and distinct elements. To reach a finding of guilty, there must be proof of specific intent to commit the offense. And, independent of that, there must be proof that the overt act amounted to more than mere preparation. The act and the intent must also coincide. In *Byrd*, the Court did not overturn the conviction because of a failure of proof with respect to specific intent. The Court overturned the conviction because the acts Bryd committed while he had the required intent did not amount to more than mere preparation. As in this case, those acts included taking money to purchase marijuana for another, and setting out to make the purchase.

In this case, the providence inquiry does not support acceptance of the plea to attempted distribution of marijuana, because there is no factual basis for concluding that the acts admitted by Appellant amounted to more than mere preparation for the offense of distribution of marijuana. One possible reason for this error is that the military judge failed to completely explain the elements of an attempt to the Appellant. The military judge did not advise the Appellant of the four elements required for an attempt. The military judge, instead, advised the Appellant of the elements of distribution of marijuana in a slightly modified form, to indicate that the intended offense had not been completed. R. at 194. If the military judge had properly explained the elements of attempt, including the element requiring that the act amount to more than mere preparation, the parties at trial might have realized that the factual basis for the plea was insufficient.

I would disapprove specification 2 of the Charge and, although not required, under the circumstances of this case, I would dismiss it. Disapproval of the finding of guilty as to specification 2 of the Charge would remove any prejudice as to findings caused by the erroneous acceptance of Appellant's plea. I would find that there was no prejudice as to sentence from this error.

## V. Decision

We have reviewed the record in accordance with Article 66, UCMJ. The findings are correct in law and fact. However, we find that the military judge erred in denying Appellant's motion for appropriate relief because we find that the Commander was not neutral and detached when he conducted Appellant's 48-hour probable cause review. Pursuant to RCM 305(k), Appellant should have received an additional eight days of credit against the sentence to confinement as approved and ordered executed. At this point, Appellant has no unexecuted confinement to which this credit can be applied. Accordingly, we direct that the credit be applied to Appellant's forfeitures, instead. Appellant shall be credited with eight days of total pay in paygrade E-1, in accordance with RCM 305(k). Otherwise, the findings and sentence, as approved below, are affirmed.

BAUM, Chief Judge, with whom KANTOR, Judge, joins, concurring in the result:

Judge Kantor and I concur with all in the principal opinion except for that portion dealing with attempted distribution of marijuana. We disagree with Judge Bruce's conclusions concerning that offense and his reliance on *United States v. Byrd*, 24 M.J. 286 (CMA 1987). While the facts of *Byrd* are similar in many respects to the facts of the offense before us, there are significant differences. In *Byrd*, the guilty pleas were challenged on appeal. Here, they have not been attacked. In *Byrd*, the accused of his own volition chose not to follow through with the marijuana purchase, while in the instant case Appellant was prevented from completing the distribution offense, not by a change of heart, but solely by his arrest before the marijuana could be purchased.

In determining whether the accused was guilty of an attempt, the Court in *Byrd* applied the following standard: "'[A] defendant must have engaged in conduct which constitutes a

substantial step toward commission of the crime' and that '[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent.'" 24 M.J. at 290 (citing *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir. 1977), *cert. denied*, 434 U.S. 941 (1977)). Thereafter, aware that the accused's intent was suspect after he did not purchase marijuana upon arrival at his liquor store destination, the Court stated that the accused's "[r]iding to the liquor store with the other occupants of the taxicab was not 'strongly corroborative of the firmness of' Byrd's intent to distribute marijuana. The act is simply too ambiguous." 24 M.J. at 290. Here, there was nothing ambiguous about Appellant's actions and no act by him that calls into question the firmness of his intent to purchase and distribute marijuana.

Subsequent to the *Byrd* decision, *United States v. Prater* made it clear that, in order to reject a guilty plea, the record of trial must show a substantial basis in law and fact for questioning that plea. 32 M.J. 433, 436 (CMA 1991). Judge Kantor and I find no substantial basis for questioning the unchallenged plea in the instant case. The guilty plea inquiry provides sufficient facts to convince us that all the elements of attempted distribution of marijuana have been established. Accordingly, we have determined that the pleas were provident and the finding of guilty of specification 2 of the Charge is affirmed by our vote.

For the Court,



Kevin G. Ansley
Clerk of the Court